# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULIE CLEMMONS, | 1:09-cv-0469 SKO |
| Plaintiff, | **ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |
| v. | (Doc. 2) |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | |
| Defendant. | |

## BACKGROUND

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her application for Supplemental Security Income ("SSI") pursuant to Title XVI of the Social Security Act. 42 U.S.C. §§ 405(g), 1383(c)(3). The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

## FACTUAL BACKGROUND

Plaintiff was born in 1969 and completed the eleventh grade and a GED. (Administrative Record ("AR") 428-29.) Plaintiff previously worked as a tractor trailer truck driver and bus driver.

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. (Docs. 5, 10.) On April 7, 2010, the action was reassigned to the Honorable Sheila K. Oberto for all purposes. *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73; *see also* L.R. 301, 305.

(AR 474-75.)  She stopped working on January 30, 2001, because of a back injury sustained in a motor vehicle accident.  (AR 358.)

On January 30, 2001, X-rays of Plaintiff's lumbar spine revealed no evidence of fracture or subluxation[2] and only minimal degenerative changes. (AR 22, 354.) On February 5, 2001, Thomas Evans, M.D., a family physician, diagnosed Plaintiff with acute lumbar spine strain and prescribed pain medication and physical therapy.  (AR 346.)  On February 12, 2001, Plaintiff reported improvement in her condition, although she continued to have discomfort in her neck and shoulders. (AR 345.) On February 21, 2001, Plaintiff reported feeling slightly improved with physical therapy, but she was still very stiff and sore, so Dr. Evans recommended an orthopedic consultation.  (AR 343.) On March 5, 2001, Dr. Evans noted Plaintiff's improvement with physical therapy. (AR 341.)

On March 23, 2001, Michael Florio, M.D., performed an orthopedic consultative examination of Plaintiff.  (AR 358-60.)  Dr. Florio opined that, with medication and exercise, Plaintiff would recover from her injury.  (AR 360.)

On May 3, 2001, Plaintiff related to Dr. Evans that she could drive an automobile for only five to ten minutes and that her medication was only partially helpful.  (AR 338.)

On May 23, 2001, an MRI scan revealed dessication of intervertebral discs, degenerative joint disease, disc bulge, and possible nerve root impingement.  (AR 22, 336.)

On June 29, 2001, Dr. Florio saw Plaintiff for her continued complaints of back pain.  (AR 22, 356-57.)  Dr. Florio noted that Plaintiff's gait was normal, she performed the walking maneuvers without difficulty, and her functional use of the back was excellent.  (AR 22, 356.)  Dr. Florio prescribed physical therapy, with which Dr. Florio opined Plaintiff would show considerable improvement.  (AR 357.)

On July 5, 2001, Dr. Evans referred Plaintiff to Dr. Florio because of persistent back pain and lumbar disc involvement and sciatica that were not improving with conservative treatment.  (AR

---

[2] Subluxation denotes an incomplete or partial dislocation. *Dorland's Illustrated Medical Dictionary* 1817 (31st ed. 2007) [hereinafter *Dorland's*].

2

334.) On July 17, 2001, Plaintiff canceled her appointment with Dr. Florio and did not reschedule the appointment. (AR 355.) Plaintiff underwent physical therapy in August 2001, but canceled her appointment on August 31, 2001. (AR 361.)

On August 21, 2001, Michael Wlasichuk, M.D., a treating physician, opined that Plaintiff could not sit or stand for prolonged periods of time. (AR 362.) Plaintiff could not repeatedly bend, stoop or climb, nor lift more than 15 pounds. (AR 362.) On October 9, 2001, Dr. Wlasichuk opined that Plaintiff would be precluded from heavy lifting and repeated bending and stooping. (AR 372.)

On August 4, 2003, X-rays of Plaintiff's lumbar spine revealed no fracture, no significant disc narrowing, and only slight degenerative changes. (AR 293.) On August 9, 2003, additional X-rays revealed (1) no acute compression fracture or dislocation after trauma and (2) mild degenerative osteoarthritis. (AR 290.)

On September 26, 2003, an MRI of Plaintiff's lumbar spine revealed (1) very mild facet joint disease at L3-L4 through L5-S1, (2) no spinal stenosis,[3] (3) no lateral recess encroachment, (4) very mild bulge at L5-S1 not affecting canal or nerve roots, and (5) no identifiable fracture. (AR 282.)

On November 3, 2003, Dr. Evans noted that Plaintiff's MRI scan showed minimal lumbar disc disease and opined that Plaintiff would be able to perform jobs not requiring heavy lifting. (AR 276.) On November 15, 2003, despite this "negative MRI scan," Dr. Evans opined that Plaintiff was not able to work. (AR 273.)

On November 17, 2003, Plaintiff filed an application for SSI, alleging disability beginning on January 30, 2001, due to back pain. (AR 107-12, 131.)

On February 17, 2004, Jonathan Gurdin, M.D., performed a consultative orthopedic evaluation of Plaintiff. (AR 189-90.) Dr. Gurdin opined as follows:

> Unquestionably [Plaintiff's] excess weight is aggravating her back complaints. I would expect improvement with weight loss and ongoing physical therapy.

---

[3] Spinal stenosis denotes narrowing of the vertebral canal, nerve root canals, or intervertebral foramina of the lumbar spine caused by encroachment of bone upon the space. *Dorland's*, *supra*, at 1795.

3

> At the present time [Plaintiff] would have difficulty bending and working in a bent over position. She could probably be on her feet moving around for 60 to 90 minutes at a time and for 4 or 5 hours out of 8 hours. She could probably sit for 1½ to 2 hours at a time and for 5 or 6 hours out of 8 hours. Hand and arm function was intact.

(AR 190.)

On March 15, 2004, Plaintiff reported to Dr. Evans that her pain medication was effective and requested a lower dose. (AR 253.)

On April 19, 2004, a state agency medical consultant, Carmen Lopez, M.D., assessed Plaintiff's physical residual functional capacity ("RFC"). (AR 203-210.) Dr. Lopez opined that Plaintiff could (1) occasionally lift and/or carry up to 20 pounds and frequently up to 10 pounds; (2) stand and/or walk for a total of about six hours in an eight-hour workday; (3) sit for about six hours in an eight-hour workday; and (4) perform unlimited pushing and/or pulling with the upper and lower extremities. (AR 204.) Plaintiff had no postural, manipulative, visual, communicative, or environmental limitations. (AR 205-07.)

On August 21, 2004, Dr. Evans noted that, although Plaintiff had not been driving a commercial vehicle since her back injury, she drove a private vehicle without difficulty. (AR 242.) On November 29, 2005, Dr. Evans completed an RFC questionnaire, noting that he had seen Plaintiff every eight to twelve weeks since 2002. (AR 324.) Dr. Evans opined as follows:

- Plaintiff's pain, fatigue, or other symptoms were severe enough to "constantly" interfere with attention and concentration needed to perform even simple work tasks. (AR 325.)
- Plaintiff could maintain attention and concentration for fifteen minutes at a time. (AR 325.)
- Plaintiff could only walk one city block without rest or severe pain. (AR 326.)
- Plaintiff could sit for 20 minutes before needing to get up. (AR 326.)
- Plaintiff could stand for ten minutes before needing to sit down or walk around. (AR 326.)
- Plaintiff would need to lie down for 30 to 45 minutes every two hours. (AR 326.)

- Plaintiff would require a job allowing her to shift positions at will from sitting, standing, or walking. (AR 327.)

- Plaintiff would need to take unscheduled breaks every one to two hours for 15 to 30 minutes at a time during an eight-hour working day. (AR 327.)

- If Plaintiff sat for a prolonged period of time, she would need to elevate her legs. If Plaintiff had a sedentary job, she would need to elevate her leg more than half the time during an eight-hour working day. (AR 327.)

- Plaintiff would require the use of a cane or other assistive device while standing or walking. (AR 327.)

- Plaintiff could lift and carry occasionally less than ten pounds. (AR 327.)

- Plaintiff could never look down, turn her left or right, look up, or hold her head in a static position. (AR 327.)

- Plaintiff could never twist, stoop, nor climb ladders or stairs. (AR 327.)

- Plaintiff could only reach overhead for 75% of the time during an eight-hour working day. (AR 328.)

- Plaintiff was likely to be absent from work more than four days per month as a result of her impairments. (AR 328.)

On August 5, 2004, another state agency medical consultant, Durell D. Sharbaugh, M.D., assessed Plaintiff's physical RFC. (AR 193-200.) Dr. Sharbaugh opined that Plaintiff could (1) occasionally lift and/or carry up to 20 pounds and frequently up to 10 pounds; (2) stand and/or walk for a total of about six hours in an eight-hour workday; and (3) sit for about six hours in an eight-hour workday. (AR 194.) Plaintiff could frequently climb, balance, and crawl, and occasionally stoop, kneel, and crouch. (AR 195.) Plaintiff had no manipulative, visual, communicative, or environmental limitations. (AR 196-97.)

On October 16, 2004, Plaintiff visited Dr. Evans for a checkup for renal insufficiency and chronic back pain. (AR 233-34.) On February 4, 2005, Dr. Evans noted that Plaintiff continued to do fairly well when she took her pain medication and her renal function was stable. (AR 319.)

The Commissioner denied Plaintiff's application initially and again on reconsideration; consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 56-

5

1  67.) On January 25, 2006, ALJ Bert C. Hoffman, Jr., held a hearing and issued a decision on May
2  16, 2006, finding Plaintiff not disabled. (AR 44-52, 425-61.)

3  On April 25, 2006, a physical examination of Plaintiff revealed mild para-lumbar muscle
4  tenderness, negative straight-leg raising, and normal gait. (AR 406.) On July 3, 2006, an MRI of
5  Plaintiff's lumbosacral spine was negative, except for minimal bulging at L5-S1. (AR 396.)

6  On July 7, 2006, James Nowlan, Jr., M.D., an internist, performed a consultative examination
7  of Plaintiff. (AR 415-18.) Dr. Nowlan noted that Plaintiff moved slowly "with a painful walk."
8  (AR 416.) Dr. Nowlan opined that Plaintiff could stand and walk for two hours in an eight-hour day,
9  sit for an unlimited amount of time, and did not require an assistive device. (AR 417.) Plaintiff
10 could lift five pounds frequently and ten pounds occasionally and had "significant postural
11 limitations," but no manipulative limitations. (AR 418.)

12 The Appeals Council granted Plaintiff's request for review of the ALJ's decision and
13 remanded the case to the ALJ on September 22, 2006. (AR 75-84.)

14 On November 20, 2006, ALJ Edwin Hendrix found Plaintiff disabled and eligible for Medi-
15 Cal benefits as of May 25, 2005. (AR 175-83.)

16 On December 4, 2006, Plaintiff related to Dr. Evans that she "has had total disability under
17 Social Security because of multiple medical problems with renal insufficiency, hypertension and
18 lumbar disk disease." (AR 413.)

19 On February 27, 2007, upon remand from the Appeals Council, ALJ Hoffman held another
20 hearing where Plaintiff testified that a back injury in 2001 kept her from working and she was
21 diagnosed in 2002 with a kidney problem causing her fatigue and flank pain. (AR 465.) Plaintiff
22 also complained of pain in her lower back that sometimes radiated to her legs; she had used a cane
23 to walk around for about three years. (AR 467-68.)

24 According to Plaintiff, she required the assistance of her roommate to help her dress. (AR
25 469.) Plaintiff could only lift and carry five to ten pounds because of her back pain. (AR 469.) In
26 a week Plaintiff would have four to five "bad days" where she would be lying down most of the day

27
28                                                  6

because of back pain. (AR 470.) Plaintiff could stand for five to ten minutes at a time, sit for 20 to 30 minutes at a time before needing to move around, and could walk with a cane for only about a block. (AR 470-71.) Further, in an eight-hour period during the day Plaintiff slept for about a total of three hours because of fatigue. (AR 471-72.) Plaintiff could not lift ten pounds for a total of two to three hours in an eight-hour day and could only focus or concentrate for ten to 15 minutes. (AR 472, 474.)

A vocational expert ("VE") classified Plaintiff's past jobs as a tractor trailer truck driver and bus driver as semi-skilled and medium.[4] (AR 475.) The VE testified that a hypothetical person of Plaintiff's age, education, and work history could perform sedentary,[5] unskilled jobs with a sit/stand option such as a microfilming document preparer or a sack repairer. (AR 475-76.) Sedentary, unskilled jobs without a sit/stand option that such a person could perform include food and beverage order clerk, telephone quotation clerk, and ampoule sealer. (AR 477-78.) There would be no available jobs, however, if such a person had Plaintiff's self-described limitations. (AR 478.)

On April 23, 2007, the ALJ issued a decision finding Plaintiff not disabled since the application date of November 17, 2003. (AR 15-27.) Specifically, the ALJ found that Plaintiff (1) had not engaged in substantial gainful activity since the alleged onset date of disability; (2) has an impairment or a combination of impairments that is considered "severe" based on the requirements in the Code of Federal Regulations; (3) does not have an impairment or combination of impairments that meets or equals one of the impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) is unable to perform her past relevant work; and (5) could perform other jobs in significant numbers in the national economy. (AR 20-26.)

---

[4] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, [the Commissioner determines] that he or she can also do sedentary and light work." 20 C.F.R. § 416.967(c).

[5] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. § 416.967(a). "Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." *Id.*

1  The ALJ found that Plaintiff had the RFC to (1) lift and carry ten pounds occasionally and frequently; (2) stand and/or walk two hours in an eight-hour workday; and (3) sit up to six hours in an eight-hour workday. (AR 20, 23.)  In doing so, the ALJ gave greater weight to the clinical findings of Drs. Gurdin and Wlasichuk and less weight to the opinions of Drs. Evans and Nowlan. (AR 22-24.) The ALJ further found that Plaintiff's renal insufficiency became stable with prescribed medication. (AR 24.)

Plaintiff sought review of this decision before the Appeals Council.  On February 17, 2009, the Appeals Council denied review. (AR 7-11.)  Therefore, the ALJ's decision became the final decision of the Commissioner.  20 C.F.R. § 416.1481.[6]

On March 11, 2009, Plaintiff filed a complaint before this Court seeking review of the ALJ's decision.  Plaintiff contends that the ALJ erred in (1) finding Plaintiff not credible, (2) rejecting the opinions of Drs. Evans and Nowlan, (3) failing to adopt ALJ Hendrix's findings regarding Plaintiff's application for Medi-Cal benefits, and (4) finding that Plaintiff's renal condition had stabilized.

## SCOPE OF REVIEW

The ALJ's decision denying benefits "will be disturbed only if that decision is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999).  In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the Commissioner. *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996).  Instead, the Court must determine whether the Commissioner applied the proper legal standards and whether substantial evidence exists in the record to support the Commissioner's findings. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

"Substantial evidence is more than a mere scintilla but less than a preponderance." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).  "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

---

[6] On July 9, 2007, Plaintiff filed a subsequent application for SSI, upon which the ALJ found Plaintiff to be disabled beginning on January 1, 2008. (AR 8.)

*Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)).  The Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citation and internal quotation marks omitted).

## **REVIEW**

An individual is considered disabled for purposes of disability benefits if he or she is unable to engage in any substantial, gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted, or can be expected to last, for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see also Barnhart v. Thomas*, 540 U.S. 20, 23 (2003).  The impairment or impairments must result from anatomical, physiological, or psychological abnormalities that are demonstrable by medically accepted clinical and laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do her previous work, but cannot, considering her age, education, and work experience, engage in any other kind of substantial, gainful work that exists in the national economy.  42 U.S.C. §§ 423(d)(2)-(3), 1382c(a)(3)(B), (D).

The regulations provide that the ALJ must undertake a specific five-step sequential analysis in the process of evaluating a disability.  In the First Step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity.  20 C.F.R. §§ 404.1520(b), 416.920(b).  If not, in the Second Step, the ALJ must determine whether the claimant has a severe impairment or a combination of impairments significantly limiting her from performing basic work activities.  *Id.* §§ 404.1520(c), 416.920(c).  If so, in the Third Step, the ALJ must determine whether the claimant has a severe impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments ("Listing"), 20 C.F.R. 404, Subpart P, App. 1.  *Id.* §§ 404.1520(d), 416.920(d).  If not, in the Fourth Step, the ALJ must determine whether the claimant

has sufficient RFC despite the impairment or various limitations to perform her past work.[7] *Id.* §§ 404.1520(f), 416.920(f). If not, in Step Five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in significant numbers in the national economy. *Id.* §§ 404.1520(g), 416.920(g). If a claimant is found to be disabled or not disabled at any step in the sequence, there is no need to consider subsequent steps. *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. §§ 404.1520, 416.920.

## DISCUSSION

**A.     The ALJ's Consideration of Plaintiff's Credibility**

Plaintiff maintains that the ALJ erred in finding her not credible. The Commissioner asserts, however, that the ALJ gave several valid reasons for discounting Plaintiff's testimony.

**1.     Legal Standard**

In evaluating the credibility of a claimant's testimony regarding subjective pain, an ALJ must engage in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged. *Id.* The claimant is not required to show that her impairment "could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Id.* (*quoting Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)). If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives "specific, clear and convincing reasons" for the rejection. *Id.* As the Ninth Circuit has explained:

---

[7] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule. Social Security Ruling 96-8p. The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments. *Id.* "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, *inter alia*, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

> The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing.

*Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (citations and internal quotation marks omitted); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226-27 (9th Cir. 2009); 20 C.F.R. §§ 404.1529, 416.929. Other factors the ALJ may consider include a claimant's work record and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

### 2. Analysis

In this case, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms. (AR 22.) Therefore, absent affirmative evidence of malingering, the ALJ's reasons for rejecting Plaintiff's testimony must be clear and convincing. As discussed further below, the Court finds that the ALJ gave clear and convincing reasons supported by the record to discount Plaintiff's credibility.

First, the ALJ found that Plaintiff's failure to follow Dr. Florio's recommendations regarding physical therapy detracted from her credibility. (AR 22, 355, 357, 379.) Plaintiff's failure to follow prescribed or recommended medical treatment and her doctor's advice is a clear and convincing reason for finding the extent of her subjective limitations not fully credible. *See Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991) (en banc) (noncompliance with prescribed course of treatment is a relevant consideration in assessing credibility); 20 C.F.R. § 416.930(b) ("[i]f you do not follow the prescribed treatment without a good reason, [the Commissioner] will not find you disabled").

Second, the ALJ found that Plaintiff had continued to receive conservative treatment for her complaints of pain, noting that, from December 2003 to November 2004, Plaintiff remained on the same medication and requested a lower dosage. (AR 24, 253.) "[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment."

11

*Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007).  Further, the ALJ's consideration of Plaintiff's improvement when she took her pain medication as noted by Dr. Evans in February 2005 (AR 24, 319) was a clear and convincing reason to discount Plaintiff's testimony.  *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999) (ALJ's finding that symptoms improved with medication was valid consideration in assessing claimant's credibility).

Third, the ALJ also considered the objective medical findings in discounting Plaintiff's testimony.  (AR 22-25.)  The ALJ noted that X-rays of Plaintiff's lumbar spine in August 2003 only showed mild degenerative changes and that MRIs in September 2003 and July 2006 showed mild or minimal bulging which did not affect nerve roots.  (AR 22, 282, 290, 293, 396.)  The ALJ also noted that X-rays of Plaintiff's lumbar spine in January 2001 showed no evidence of fracture and only minimal degenerative changes (AR 22, 354).  *See Connett v. Barnhart*, 340 F.3d 871, 873-74 (9th Cir. 2003) (holding that substantial evidence supported ALJ's decision to deny claimant's claim with respect to back, shoulder, and neck pain because, *inter alia*, X-rays, CT scans, and myelograms were normal).  "Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis."  *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).

Fourth, in discounting Plaintiff's credibility, the ALJ found multiple inconsistencies in the record.  Inconsistent statements are matters appropriately considered in evaluating a claimant's subjective complaints.  In rejecting testimony regarding subjective symptoms, permissible grounds include a reputation for dishonesty, conflicts or inconsistencies between the claimant's testimony and his conduct or work record, internal contradictions in the testimony, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains.  *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004); *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002).  The ALJ may consider whether the Plaintiff's testimony is believable or not.  *Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999).

In this case, the ALJ cogently found that Plaintiff's ability to drive an automobile was inconsistent with Dr. Evans' finding that her "pain constantly interfered with her ability to maintain attention and concentration to perform simple tasks." (AR 23, 325.) The ALJ further noted that, although Plaintiff testified in 2007 that she had used a cane for three years, Dr. Nowlan indicated in July 2006 that Plaintiff did not require an assistive device. (AR 25, 417, 468.) In addition, the ALJ found that Plaintiff had reported to Dr. Evans in December 2006 that she "had total disability under Social Security," when in fact Plaintiff was under no prior period of disability and her claim before ALJ Hoffman had not been determined. (AR 25, 413.) Accordingly, these were clear and convincing reasons for the ALJ to find Plaintiff less than fully credible.

Fifth, the ALJ further noted Plaintiff's "dismal work history with only one and one-half years of employment within the past 15 years." (AR 25.) An ALJ may consider a claimant's work history as part of the credibility analysis. *Thomas*, 278 F.3d at 959.

Sixth, the ALJ found that in April 2006 Plaintiff had demonstrated, *inter alia*, a normal gait, yet three months later in July 2006, with no significant change in treatment, Dr. Nowlan noted that Plaintiff moved slowly "with a painful walk." (AR 25, 406, 416.) The ALJ, therefore, found that Plaintiff was possibly exaggerating for secondary gain. (AR 25.) The ALJ's finding in this regard was a clear and convincing reason to discount Plaintiff's testimony, as a tendency to exaggerate is a legitimate consideration in determining credibility. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).

In sum, the ALJ cited clear and convincing reasons for rejecting Plaintiff's subjective complaints regarding the intensity, duration, and limiting effects of her symptoms. *Cf. Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004). Moreover, the ALJ's reasons were properly supported by the record and sufficiently specific to allow this Court to conclude that the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit Plaintiff's testimony.

### B. The ALJ's Weighing of Medical Opinions

Plaintiff next contends that the ALJ erred in failing to adopt the opinions of Drs. Nowlan and Evans. Defendant maintains, however, that their opinions were entitled to less weight because they were either based on Plaintiff's subjective complaints or inconsistent with the medical evidence.

#### 1. Legal Standard

In evaluating medical opinions, the case law and regulations distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). *See* 20 C.F.R. §§ 416.902, 416.927; *see also Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, the opinions of treating physicians are given greater weight than those of other physicians, because treating physicians are employed to cure and, therefore, have a greater opportunity to know and observe the claimant. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007); *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996). Despite the presumption of special weight afforded to treating physicians' opinions, an ALJ is not bound to accept the opinion of a treating physician. The ALJ may only give less weight to a treating or examining physician's opinion that conflicts with the medical evidence, however, if the ALJ provides specific and legitimate reasons for discounting the opinion. *See Lester*, 81 F.3d at 830-31 (the opinion of a treating doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record); *see also Orn*, 495 F.3d at 632-33 ("Even when contradicted by an opinion of an examining physician that constitutes substantial evidence, the treating physician's opinion is 'still entitled to deference.'" (citations omitted)); Social Security Ruling 96-2p (a finding that a treating physician's opinion is not entitled to controlling weight does not mean that the opinion is rejected).[8]

---

[8] Social Security Rulings are "final opinions and orders and statements of policy and interpretations" that the Social Security Administration has adopted. 20 C.F.R. § 402.35(b)(1). Once published, these rulings are binding precedent upon ALJs. *Heckler v. Edwards*, 465 U.S. 870, 873 n.3 (1984); *Gatliff v. Comm'r of Soc. Sec. Admin.*, 172 F.3d 690, 692 n.2 (9th Cir. 1999).

**2.     Analysis**

Here, the ALJ gave little weight to the opinion of Dr. Nowlan, the consultative internist, because "it appears that [Dr. Nowlan] solely relied on [Plaintiff's] subjective complaints," rather than on medical evidence in the record available to him, such the minimal findings regarding Plaintiff's lumbar spine. (AR 24, 415-16.)

"A physician's opinion . . . premised to a large extent upon the claimant's own accounts of his symptoms and limitations may be disregarded where those complaints have been properly discounted." *Morgan*, 169 F.3d at 602 (internal quotation marks omitted). Because, as explained above, the ALJ properly discounted Plaintiff's credibility regarding her limitations, the ALJ also properly rejected Dr. Nowlan's findings to the extent they were primarily based on Plaintiff's subjective complaints. *See Bray*, 554 F.3d at 1228 (ALJ properly may discount physician's opinion that is based solely upon claimant's self-reporting if ALJ concludes claimant's self-reporting is not credible); *Tonapetyan*, 242 F.3d at 1149 (medical opinion premised on subjective complaints may be disregarded where record supports ALJ in discounting claimant's credibility); *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997) (affirming ALJ's rejection of treating physician's opinion based on claimant's self-reports, which ALJ found were not credible); *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989) (disregarding treating physician's opinion because it was premised on plaintiff's subjective complaints, which the ALJ had already discounted).

Moreover, the ALJ found that "[t]he limitations set forth by Dr. Nowlan appear too restrictive in light of the 'negative' or 'minimal' or 'mild' findings of record." (AR 24.) The ALJ's finding that Dr. Nowlan's opinion was inconsistent with the medical evidence was also a specific, legitimate reason to afford his opinion less weight. *See Batson*, 359 F.3d at 1195 (affirming ALJ's rejection of the controverted opinion of claimant's treating physician because the opinion was conclusory, in checklist form, and not supported by the record as a whole, or by objective medical findings); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (lack of supporting clinical findings is valid reason for rejecting treating physician's opinion).

The ALJ further found that the opinion of Plaintiff's treating physician, Dr. Evans, regarding Plaintiff's inability to work was entitled to no weight. (AR 23.) The ALJ legitimately found that Dr. Evans' opinion expressed throughout the record that Plaintiff was unable to work was not entitled to significant weight nor binding upon the Commissioner (AR 23). *See Batson*, 359 F.3d at 1195 (reaffirming that treating physician's opinion is "not binding on an ALJ with respect to the . . . ultimate determination of disability"); 20 C.F.R. § 416.927(e)(3).

Furthermore, Dr. Evans found that Plaintiff's MRI scan in November 2003 showed minimal lumbar disc disease, yet Dr. Evans opined in a questionnaire in November 2005 that, *inter alia*, Plaintiff suffered from constant pain that essentially precluded her from all work. (AR 276, 325, 479.) In considering Dr. Evans' opinion, the ALJ found that "[t]he noted 'minimal' or 'mild' or 'negative' or 'no' findings seem disproportionate to the extreme restrictions Dr. Evans presented in the questionnaire." (AR 23 (citation omitted).) Although Dr. Evans' opinion is "still entitled to deference," *Orn*, 495 F.3d at 633, where the treating physician's opinion is not supported in the first instance, as here, *Orn* is not instructive. The lack of sufficient medical evidence supporting Dr. Evans' opinion regarding Plaintiff's ability to work is a specific, legitimate reason to discount his opinion. *See Batson*, 359 F.3d at 1195; *Magallanes*, 881 F.2d at 751. Accordingly, the ALJ provided specific, legitimate reasons supported by substantial evidence for affording less weight to the opinions of Drs. Nowlan and Evans.

**C.     The ALJ's Consideration of ALJ Hendrix's Decision**

Plaintiff further asserts that ALJ Hoffman erred in failing to adopt ALJ Hendrix's decision awarding Plaintiff Medi-Cal benefits in November 2006. In support of this position, Plaintiff cites *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002), which holds that an ALJ must ordinarily give great weight to a Veterans Administration ("VA") determination of disability, unless the ALJ gives persuasive, specific, and valid reasons for giving it less weight that are supported in the record.

Here, the determination of disability made by the State of California is not binding on the Commissioner. *See Wilson v. Heckler*, 761 F.2d 1383, 1385 (9th Cir. 1985) ("The state finding may be introduced into evidence before the Secretary, but she may attribute as much or as little weight to it as she deems appropriate."); 20 C.F.R. § 416.904 ("[A] determination made by another agency that you are disabled or blind is not binding on [the Commissioner]."). In any event, ALJ Hoffman mentioned ALJ Hendrix's Medi-Cal decision and explained his reasons for not giving it great weight. *Cf. McCartey*, 298 F.3d at 1076 (ALJ failed to consider VA finding and did not mention it in decision). ALJ Hendrix had relied on the fact that the Commissioner had previously not met his burden to show that Plaintiff had no significant exertional limitations precluding reliance on the Medical-Vocational Guidelines. (AR 182.) Because the Commissioner had not met his burden, ALJ Hendrix concluded that Plaintiff was not able to do other work and was, therefore, disabled. As ALJ Hoffman explained in his decision, however, the Commissioner's prior decision became moot when the Appeals Council remanded the case in September 2006 for further proceedings before ALJ Hoffman, who found that Plaintiff was capable of performing a full range of sedentary work and so the Medical-Vocational Guidelines applied. (AR 26, 82-84.) Plaintiff's contention in this regard and reliance on *McCartey* are, therefore, unavailing.

**D.     The ALJ's Consideration of Plaintiff's Renal Failure**

Plaintiff finally maintains that the ALJ erred in finding that her renal failure had stabilized. (AR 20.) In support of her contention, Plaintiff attaches to her opening brief additional medical records that she submitted to the Appeals Council, indicating, *inter alia*, that Plaintiff began dialysis in July 2008 because of end stage renal disease. "Because this evidence was submitted to and considered by the Appeals Council, and is part of the administrative record, this Court may consider it in reaching its final decision even though the ALJ did not have the benefit of this information during the initial application hearing." *Vasquez*, 572 F.3d at 595 n.7 (*citing Bilby v. Schweiker*, 762 F.2d 716, 718 n.2 (9th Cir. 1985) (per curiam)). The Appeals Council properly considered this new evidence and rejected it, however, because it was irrelevant to the issue of whether Plaintiff was

17

disabled on or before April 23, 2007, the date of the ALJ's decision. (AR 8.) In any event, substantial evidence supports the ALJ's finding that Plaintiff's renal failure had stabilized during the relevant period, as Dr. Evans noted in February 2005 that Plaintiff's renal function was stable (AR 319). *See Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits.").

In addition, Plaintiff maintains that the Court should remand this case and direct the Commissioner to consider that Plaintiff's disability began on October 16, 2004, when Plaintiff's renal insufficiency was first diagnosed. Plaintiff contends that the progressive nature of Plaintiff's renal insufficiency leading to end stage renal failure counsels in favor of remanding this case to the Commissioner to reassess Plaintiff's onset date of disability. Plaintiff provides no authority supporting her proposition other than Social Security Ruling 83-20 which relates to the Commissioner's policy for establishing the onset date of disability. In any event, the ALJ found that Plaintiff had not been disabled since November 17, 2003, the date Plaintiff applied for SSI. (AR 26.) Accordingly, Plaintiff's contention in this regard is without merit.

## CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, the Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Michael J. Astrue, Commissioner of Social Security, and against Plaintiff Julie Clemmons.

IT IS SO ORDERED.

**Dated:   September 15, 2010**          /s/ Sheila K. Oberto
                                         UNITED STATES MAGISTRATE JUDGE